[S. F. No. 9151.   In Bank.—May 25, 1922.]

JOHN HENRY ROWLAND et al., Copartners, etc., Respondents, v. E. CLEMENS HORST, Appellant.

[1] PLEADING—PRINCIPAL AND AGENT—RECOVERY OF MONEY—PARTIES. In an action between the plaintiffs as principals and the defendant as their agent for the payment to them of money claimed to have been received by the agent for their benefit and retained by him, the party from whom the money was received by the agent was not a necessary party.

[2] ID.—PARTIES—NECESSARY DEFENDANTS.—Necessary parties to an action in the capacity of defendants are those who are interested in resisting the demands of the plaintiff either immediately or consequently and whose rights would be prejudicially affected by the controversy.

[3] PRINCIPAL AND AGENT — SETTLEMENT OF CLAIM — RECOVERY FROM AGENT — PARTIES. — In an action for money had and received brought by principals against their agent to recover the amount of a claim settled by the agent, a part of which remained uncollected, the defendant cannot be permitted to occupy the position of one refusing or failing to make the collection of the balance to which he has long been entitled, and yet at the same time refuse to settle with his principals upon the sole ground that such collection has not been made, and the plea that the party from whom the money is to be collected should be joined as a defendant is wholly without the semblance of merit.

[4] ID. — AMOUNT DUE PRINCIPALS — SUFFICIENCY OF EVIDENCE. — In this action by principals to recover the amount of a claim settled by their agent, a part of which remained uncollected at the time of suit, the findings as to the plaintiff's share of the net amount received, and as to the amount the plaintiffs were entitled to receive of the part uncollected, are sufficiently supported by the evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John T. Nourse, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edward C. Harrison and Maurice E. Harrison for Appellant.

McCutchen & Willard and McCutchen, Olney, Willard, Mannon & Greene for Respondents.

RICHARDS, J., *pro tem.*—This action was commenced by the plaintiffs as copartners, doing business under the firm name and style of John Westrope & Company, to recover from the defendant the sum of $42,812.50, with legal interest and costs, claimed to have been received by the defendant as the agent of said firm in certain transactions which are set forth in detail in the plaintiff's amended complaint. Said complaint is in three counts, which all relate to the same matter. The first count in brief alleges that the plaintiffs, who, under their said firm name, are engaged in the business of buying, selling, and shipping grain in the city of Hull, England, but with a local office or agency in the city and county of San Francisco, which had, during the months of July and August, 1915, delivered to the Southern Pacific Company at various points in California thirty-five carloads of barley, aggregating 30,754 sacks, of the total weight of 3,240,944 pounds, for shipment to said plaintiffs, as consignees, at Hull, England, via the Sunset route of said railroad; and that while said barley was in course of transit, at or near the city of Galveston, Texas, it was damaged by the Galveston flood, which occurred in August of that year, through the negligence of the carrier, from which the plaintiffs had sustained a large loss. That the local agent of the plaintiffs in San Francisco had secured the services of the defendant to act as the plaintiffs' agent and on their behalf in presenting the claim of said plaintiffs to the Southern Pacific Company for such loss and in conducting negotiations for the purpose of securing a settlement of their said claim; and that said defendant, acting as the plaintiffs' said agent, had entered into an agreement

of settlement with the said Southern Pacific Company, whereby the claim of the said plaintiffs had been settled in full and by which the said defendant, as such agent of the plaintiffs, had received the sum of $42,812.50, which he had failed and neglected to account for or pay over to the said plaintiffs. The second count of the plaintiffs' amended complaint repeats in the main, but with somewhat more of detail, the averments of the first count, but relates more particularly to a specific payment of $12,500, which was to be made, and which was alleged to have been made, by the Southern Pacific Company in final adjustment and settlement of a balance remaining unpaid upon the claims of the plaintiffs and certain other shippers whose barley had also been damaged in said flood, and of which sum the plaintiffs claim that, after making certain deductions, they are entitled to a balance of $3,700 from the defendant, but which he had failed and refused to pay over to the plaintiffs. The third count was in the form of a common count upon an alleged indebtedness of $42,812.50 due from the defendant to the plaintiffs and unpaid. This amended complaint was unverified. There was no demurrer. The defendant's answer consisted of a general denial of each of the counts in the amended complaint, to which was added a counterclaim for services alleged to be of the reasonable value of $50,000. An amendment to this answer was later filed containing three additional defenses, the first that of an alleged nonjoinder of the E. Clemens Horst Company, alleged to be a necessary party defendant; the second being that of an alleged nonjoinder of the Southern Pacific Company, alleged also to be a necessary party defendant; and the third being a plea to the effect that the plaintiffs doing business as partners under a fictitious name had not complied with the statutes of California having reference to such partnerships, so as to be entitled to maintain their present action. The first and third of these special defenses appeared to have been waived during the trial, but the second thereof, viz., the nonjoinder of the Southern Pacific Company, is still insisted upon on this appeal. The cause went to trial upon the issues as thus framed, and upon its submission the trial court made and filed its findings of fact, going into much of detail as to the history of the transaction, and arriving at its legal conclusion that the defendant

was indebted to the plaintiffs in the sum of $23,789.43, for which sum judgment was ordered and entered. Upon the special defense of the defendant as to the nonjoinder of the Southern Pacific Company the court found that the said corporation was not a necessary party to the action. In order to determine the correctness of the aforesaid findings and judgment of the trial court it will be necessary to review somewhat the evidence upon which its determination rests.

The plaintiffs were, as has been seen, the shippers of thirty-five carloads of barley by the Sunset route of the Southern Pacific Company to themselves at Hull, England, in the summer of 1915, which barley was damaged in transit by the occurrence and effect of the Galveston flood. There were a number of other shippers of barley of about the same quality by the same route and at the same time, whose shipments were also damaged in the same flood and were largely intermingled with the plaintiffs' barley in the effort to save these cargoes from complete loss in said flood. The aggregate of such intermingled shipments of barley was fifty-six carloads. One of these other shippers was the E. Clemens Horst Company, of which the defendant is the manager, and its shipment was one carload of barley. The defendant, being interested in the matter of the claims for compensation arising out of the damage to these aggregated and intermingled carloads of barley, came into touch with the plaintiffs' local representative, with the result of his selection as the plaintiffs' fully authorized agent to make an adjustment and settlement of its claim against the Southern Pacific Company. During the course of such adjustment the defendant also came to represent another of said shippers, George W. McNear & Company, which had shipped twenty of said carloads of barley, but before the negotiations with the Southern Pacific Company were completed by him the defendant had acquired by transfer to himself the ownership of the claims of the E. Clemens Horst Company and the George W. McNear Company in respect to said intermingled carload lots of barley, and to the damages which had been occasioned thereto by said flood; so that in the month of October, 1916, when the final memorandum of adjustment and settlement of these aggregated claims was signed by the defendant representing the claim-

ants and by the duly authorized representative of the Southern Pacific Company, the defendant occupied the dual relation of agent of the plaintiffs in respect to their claim and of principal in so far as the claims of E. Clemens Horst Company and of George W. McNear Company were concerned. He assumed in making said settlement to act in his own name as to all of said claimants. The agreement of settlement is in full as follows:

"San Francisco, October 6th, 1916.

"Mr. Durbrow:

"Without prejudice I respectfully submit to you the following offer of adjustment of any and all disputes relative to the shipment of 56 cars of barley from California during July and August, 1915, and which are claimed to have been involved in Galveston flood, August, 1915.

"The above mentioned shipment shipped in the name of
>  20 cars by George W. McNear, Inc., to Christiania, Copenhagen and New York;
>  1 car by E. C. Horst & Co. to New York.
>  35 " " John Westrope Co. to Hull.
>  ——
>  56 " " cars

"The offer of settlement is as follows:

"1st: E. C. Horst & Co. to get for S. P. Co. from owners of the barley, clean releases of all liability on all 56 carloads involved in the dispute.

"2nd: S. P. Co. to deliver Horst free along side their dock to Horst's vessels, all unsold barley now in New York on docks and in warehouses, originally shipped by Westrope, McNear and Horst, as principals or agents, upon surrender to S. P. Co. bills lading covering said shipment.

"3rd: S. P. Co. to pay Horst the gross proceeds of all barley sold by S. P. Co., ex. above 56 cars, upon receipt of releases from Horst.

"4th: Horst to pay freight to New York on point of origin weights, on entire 56 carloads, less whatever amounts of freight have already been paid to S. P. Co. upon delivery of said shipments by S. P. Co.

"5th: S. P. Co. to waive reconditioning charges in event Horst fully performs all conditions.

"6th: S. P. Co. to repay Horst freight prepaid from New York to Christiania, Copenhagen and New York transfer charges on barley not transferred, plus interest thereon from date of payment until repayment of 6% per annum.

"7th: S. P. Co. to pay Horst $12,500.00 whenever and at such time as Horst has fully performed all conditions.

"8th: S. P. Co. shall pay Horst nothing for his services in making adjustments.

"San Francisco, October 9, 1916.

"E. C. HORST.
"G. W. LUCE."

Prior to the completion of the foregoing negotiations the plaintiffs had received about one-third of the total amount of their original shipment as the same had been disentangled from the intermingled aggregate, the same having been shipped to them by the Southern Pacific Company at Hull. The remainder of this original shipment was, shortly after the making of the foregoing agreement of settlement, sold by the defendant to certain European buyers, receiving therefor the sum of $29,335.24. He was also by the terms of the settlement above set forth entitled to receive from the Southern Pacific Company the sum of $12,500 whenever he had performed on his part the terms of the aforesaid agreement which required him to get for the Southern Pacific Company from the owners of the barley clean releases of all liability on all fifty-six carloads involved in the dispute. These releases were prepared by the attorney for the Southern Pacific Company and were executed by the defendant on November 13, 1916, acting on behalf of the plaintiffs as their attorney in fact. The evidence shows these releases to have been satisfactory to the Southern Pacific Company, and no other or further releases have ever by it been required. Having thus come into possession of a large sum of money belonging to his principal derived from his sales of their remaining barley to said European buyers, and having thus become entitled to receive from the Southern Pacific Company the sum of $12,500, less the sum which was to be paid as freight charges under the terms of said agreement, and having informed the plaintiffs of his said acts, the latter began seeking to make a settlement with him as their agent, by which they should receive such balance as might be due them after payment of the defend-

ant's commissions for his services and his claims for expenses incurred, and after making such deductions from the gross sum which was or should have been in his hands as he might be obligated to pay in the way of the freight charges under the terms of his foregoing agreement with the Southern Pacific Company. After repeated efforts to obtain such settlement the plaintiffs commenced the present action, with the result which has been above noted. The defendant appeals from the judgment which determines the net amount which plaintiffs were entitled to receive as a deduction from the foregoing facts.

[1] The appellant's first contention upon this appeal is that the trial court was in error in deciding adversely upon his defense of nonjoinder of the Southern Pacific Company as a necessary party defendant in this action. We discover no such error. The action was one strictly between the plaintiffs as principals and the defendant as their agent for the payment to them of money claimed to have been received by their said agent for their benefit and retained by him. The Southern Pacific Company had no interest in that relationship nor in the plaintiffs' said claim. It may be conceded that one of the defenses which the defendant might urge to his payment to the plaintiffs of the sum claimed was that he had not yet received all or a portion of said money from the Southern Pacific Company; but this would not require the joinder of the latter in the action either originally or latterly as a necessary party thereto, since it was in nowise concerned in the dispute between the plaintiffs and their agent as to the settlement of their accounts. [2] Necessary parties to an action in the capacity of defendants are those who are interested in resisting the demands of the plaintiff either immediately or consequently and whose rights would be prejudicially affected by the controversy. (Pomeroy's Code Remedies, pp. 320, 321; Code Civ. Proc., sec. 389.) It might be possible that the Southern Pacific Company would have been a proper party to this action had the defendant suggested by his pleadings or succeeded in showing as one of his defenses that the reason he had not paid over to his principals some portion of the moneys claimed from him was that he had not been able to collect the same from the said corporation under the agreement which he had made with it on the plaintiffs'

behalf, but if he had such a defense and if the presence of
the said corporation as a party to the action was necessary
to enable him to make it, the court upon his motion, or even
of its own motioin, might have ordered the said corporation
brought into the action. But this evidently is not the fact,
since the evidence discloses that the Southern Pacific Com-
pany has received from the defendant, acting as the plain-
tiffs' agent, full releases of their claims on account of their
said barley, and is satisfied therewith and stands and has
long stood ready to pay over to the defendant whatever bal-
ance of the $12,500 referred to in its agreement with him,
is due after deducting the freight charges mentioned in said
agreement. [3] The defendant herein cannot be permitted
to occupy the position of one refusing or failing to make
the collection of said balance to which he has long been
entitled, and yet at the same time refusing to settle with
his principals upon the sole ground that such collection has
not been made. Under such circumstances his dilatory plea
that the Southern Pacific Company has not been joined as
a defendant in the action does not meet with favor, and is
wholly without the semblance of merit.

The next contention of the appellant is that the evidence
is insufficient to support the finding of the trial court that
the plaintiffs' share of the net total of $34,545.64 received
by the defendant from the sale of the portion of said barley
turned over to him by the carrier and sold to European
buyers was 84.9 per cent thereof, or the sum of $29,335.24.
This contention is based upon several elements, all of which
are elaborately discussed in the briefs of counsel for ap-
pellant. He argues that there was insufficient evidence to
support the court's finding that 1,777,555 out of the total of
2,093,704 pounds of barley so sold to European buyers be-
longed to the plaintiffs. The basis of this finding was the
so-called Price-Waterhouse & Company's report. This firm
of experts were requested by the defendant himself to make
a careful examination of the barley on the New York piers
for the purpose of determining what proportion thereof
belonged to each of the original shippers. They made such
examination and report and the latter was offered in evi-
dence by the plaintiffs and was admitted without objection
on the defendant's part. It is conceded that the report em-
braced matter which would suffice to uphold the finding

of the trial court in this regard. The present objection of the defendant that it was hearsay was waived by its admission in evidence without objection. In addition to this evidence upon this point there was also offered and admitted certain letters, telegrams, and reports of the defendant, wherein he has stated that an even larger proportion of this barley belonged to the plaintiffs than that found by the court. These declarations eke out the report of the experts and supply, we think, ample evidence to justify the finding as to the amount of said barley shipped to European buyers which belonged to these plaintiffs. The appellant further argues that the evidence was insufficient to show that the plaintiffs' barley so sold on their account was of equal quality to that of the other shippers with which it had been intermingled, so as to entitle the plaintiffs to the same percentage of share in the proceeds of these European sales as the bulk of their barley bore to that of their fellow-shippers; but upon this subject also the Price-Waterhouse & Company report speaks sufficiently to show that the plaintiffs' barley was fully up to the quality which would entitle them to the same proportionate share in the proceeds of such sales as the weight of their barley bore to that of their fellow-shippers. We conclude, therefore, that the contention of the appellant that the plaintiffs were not entitled to recover the full amount of $29,335.24 as their share of the proceeds of the European sales of their barley is without merit.

[4] The appellant's next and main contention is, first, that the evidence does not sustain the finding of the trial court to the effect that the plaintiffs were entitled to receive $7,125 of the $12,500 to be paid the defendant by the Southern Pacific Company pursuant to their aforesaid agreement. The defendant himself, however, testified that the value of the plaintiffs' barley amounted to fifty-seven per cent of the value of the entire barley shipment damaged in the Galveston flood. This percentage would give the plaintiffs precisely the sum of $7,125 out of said $12,500 which the trial court awarded them and would also furnish sufficient proof to justify the court's finding to that effect. Besides there was abundant evidence that the loss to the plaintiff by reason of the damage caused by said flood was much greater in proportion than that suffered by the other

shippers. While the exact proportion of such damage was difficult of ascertainment and while the evidence in the case reflects the extent of this difficulty due to the confusion caused through the intermingling of the consignments of the several shippers, still we think the evidence taken as a whole shows that the trial court rather underestimated than enlarged the proportion of said $12,500 which the plaintiffs were entitled to receive. The second contention of the appellant under this head is his claim that the plaintiffs were entitled to recover no part of this sum of $12,500 from him for the reason that he had not received the same from the Southern Pacific Company, and hence he could not be required to account for or pay over any portion of said sum to the plaintiffs. It appears to be a fact, and the court so found, that the defendant has not yet received said sum of $12,500 from the Southern Pacific Company. But this fact standing alone would not be sufficient to bar the plaintiffs' right to recover from the defendant its due share of said sum unless it should also appear that the failure of the defendant to collect and receive this money was due to no fault or hindrance of his own. Upon this subject the evidence shows quite convincingly that the terms of settlement with the Southern Pacific Company were fixed by the above-quoted agreement between itself and the defendant as of the date of October 6, 1916; that within a few weeks after that date the defendant consummated the sale of the remainder of the plaintiffs' barley then on the New York piers to European buyers, receiving therefrom the sum of $29,335.24, money belonging to the plaintiffs; that from that time forth the defendant had in his possession ample funds with which to pay the railroad company whatever freight or other charge on account of these barley shipments were coming to it by virtue of said agreement; that not long thereafter the defendant, assuming to act for the plaintiffs, gave to the Southern Pacific Company the full releases which were required from all the shippers of said barley to be given to it by them, and that these releases so executed had at all times been satisfactory to the Southern Pacific Company. Nothing thereafter remained for the defendant to do but to get from the Southern Pacific Company the said sum of $12,500, or whatever

balance would be coming to him upon the adjustment of the predetermined and undisputed account. The defendant did not, however, do this but began delaying his settlement with his principals upon various pretexts and by the making of claims for compensation in the form of commissions and otherwise, which the trial court found to be exorbitant and refused to sustain. During the protracted interviews and correspondence carried on between the defendant and the principals or their representatives prior to the institution of this action the defendant never suggested that the fact that he had not as yet received the amount coming from the Southern Pacific Company stood in the way of a settlement with his principals, but, on the contrary, made repeated offers of immediate settlement upon other terms as to commissions and compensation which were not acceptable to them. In his pleadings in this action he made no claim or plea that the action had been prematurely brought, but based his defenses wholly upon other grounds. The present claim that the defendant ought not to be required to pay over to the plaintiffs, his principals, the large sums he had received from the sale of their barley to European buyers for the reason that he had not seen fit to collect the comparatively small sum to which he was entitled to get without obstacle from the Southern Pacific Company was an evident afterthought of which the plaintiffs had no notice or knowledge until after this action was instituted. Under these circumstances we think the trial court would have been entirely justified in directing the defendant to pay over to the plaintiffs the whole amount to which they were shown to be entitled, even though a certain small portion thereof had not been received by the defendant solely by reason of his own unexcused delay in collecting it. The trial court did not, however, go so far, but in its findings and judgment so adjusted the accounts between the parties as to charge the credits which the defendant was found entitled to receive for commissions, compensation, and traveling expenses, together with such amounts as he was required to pay the Southern Pacific Company for freight charges under the aforesaid agreement against the particular sum which the plaintiffs would otherwise have been entitled to receive from said corporation under said agreement, and by so doing did not require the defendant to actually pay over to the

plaintiffs any money which he did not for any cause receive. All that the defendant has to do under the form of this judgment is to make those settlements with the Southern Pacific Company which he was required by his agreement to do and in the way of which there is no obstacle and which he should apparently have long since done, paying over to the plaintiffs the net sum derived by him from the sales of the plaintiffs' barley to the European buyers and which he has long and without sufficient reason withheld.

As to the other contentions of the defendant with reference to the reasonableness of his compensation, these matters were submitted to the discretion of the trial court in view of all the circumstances of the case, and we are unable to discover that this discretion has been in any manner abused.

Its findings as to these matters will not, therefore, be disturbed upon appeal.

Judgment affirmed

Sloane, J., Wilbur, J., Lennon, J., Shaw, C. J., and Lawlor, J., concurred.

Justice Shurtleff, deeming himself disqualified, did not participate in the foregoing.